# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 112

*April Term, A.D. 2015*

August 19, 2015

| | |
|---|---|
| BOARD OF PROFESSIONAL RESPONSIBILITY, WYOMING STATE BAR,<br><br>Petitioner,<br><br>v.<br><br>STUWERT B. JOHNSON, WSB No. 6-2631,<br><br>Respondent. | D-15-0006 |

## ORDER OF PUBLIC CENSURE

[¶1]     **This matter** came before the Court upon a "Report and Recommendation for Public Censure," filed herein July 27, 2015, by the Board of Professional Responsibility for the Wyoming State Bar, pursuant to Section 16 of the Disciplinary Code for the Wyoming State Bar (stipulated discipline). *See also* Rule 26(f) of the Wyoming Rules of Disciplinary Procedure ("These rules shall become effective July 1, 2015, and any discipline or disability investigation pending on that date shall proceed under these rules. Any matter then pending with respect to which a formal charge has been filed shall be concluded under the procedure existing prior to the effective date of these rules."). The Court, after a careful review of the Board of Professional Responsibility's Report and Recommendation and the file, finds that the Report and Recommendation should be approved, confirmed, and adopted by the Court, and that Respondent, Stuwert B. Johnson, should be publicly censured for his conduct. It is, therefore,

[¶2]     **ADJUDGED AND ORDERED** that the Board of Professional Responsibility's Report and Recommendation for Public Censure, which is attached hereto and incorporated herein, shall be, and the same hereby is, approved, confirmed, and adopted by this Court; and it is further

[¶3]    **ADJUDGED AND ORDERED** that Stuwert B. Johnson is hereby publicly censured for his conduct, which is described in the Report and Recommendation for Public Censure. This public censure shall include issuance of a press release consistent with the one set out in the Report and Recommendation for Public Censure; and it is further

[¶4]    **ORDERED** that, pursuant to Section 26 of the Disciplinary Code for the Wyoming State Bar, Mr. Johnson shall reimburse the Wyoming State Bar the amount of $50.00, representing the costs incurred in handling this matter, as well as pay the administrative fee of $500.00. Mr. Johnson shall pay the total amount of $550.00 to the Wyoming State Bar on or before October 19, 2015; and it is further

[¶5]    **ORDERED** that the Clerk of this Court shall docket this Order of Public Censure, along with the incorporated Report and Recommendation for Public Censure, as a matter coming regularly before this Court as a public record; and it is further

[¶6]    **ORDERED** that, pursuant to Section 4(a)(iv) of the Disciplinary Code for the Wyoming State Bar, this Order of Public Censure, along with the incorporated Report and Recommendation for Public Censure, shall be published in the Wyoming Reporter and the Pacific Reporter; and it is further

[¶7]    **ORDERED** that the Clerk of this Court cause a copy of this Order of Public Censure to be served upon Respondent, Stuwert B. Johnson.

[¶8]    **DATED** this 19th day of August, 2015.

**BY THE COURT:**

/s/

**E. JAMES BURKE**
**Chief Justice**

IN THE SUPREME COURT
STATE OF WYOMING
FILED

JUL 2 7 2015

CAROL THOMPSON, CLERK
by DEPUTY

**BEFORE THE SUPREME COURT**

**STATE OF WYOMING**

In the matter of                    )
**STUWERT B. JOHNSON,**              )
**WSB # 6-2631,**                    )          *WSB No. 2014-070*
                                     )
*Respondent.*                        )   D-15-0006

## REPORT AND RECOMMENDATION FOR PUBLIC CENSURE

The Board of Professional Responsibility makes the following Report and Recommendation, with its findings of fact and recommendation to the Supreme Court of Wyoming:

### FINDINGS OF FACT

1. Respondent has been licensed to practice law in the State of Wyoming since 1993. He is also licensed to practice in the State of Utah, and maintains a law office in Ogden, Utah.

2. During 2013, Respondent undertook to represent Thomas Wixom with respect to criminal charges brought against him in the Circuit Court for the Third Judicial District, Sweetwater County, Wyoming. The charges followed a motor vehicle stop after Wixom was observed driving erratically and was com-

bative with law enforcement. Wixom was charged with Driving While Under the Influence and Interfering with a Peace Officer.

3. A blood specimen drawn from Mr. Wixom was negative for blood alcohol content but positive for blood amphetamines.

4. On October 7, 2013, an Order Upon Arraignment was entered by Judge Prokos which required Respondent "to appear in person for the 2nd conference & pre-trial conference."

5. On November 13, 2013, an Order was entered by Judge Prokos setting a second conference to be held December 18, 2013, at the Green River Circuit Court. The Order provided, "All counsel shall personally appear at the conference."

6. On December 17, 2013, Respondent faxed a motion to appear telephonically at the December 18, 2013 settlement conference.

7. On December 30, 2013, an Order was entered by Judge Prokos setting a pretrial conference for February 5, 2014, and a trial date of February 20, 2014. The Order further provided, "Any plea agreement must be submitted to the court in writing, personally signed by the defendant, by 3:30 p.m. on Feb. 14, 2014. The parties shall also each file a Pretrial Memo and motions in limine by 3:30 p.m. on Feb. 14, 2014."

8. Respondent did not appear at the February 5, 2014 pretrial conference, causing Judge Prokos to issue an Order setting the pretrial conference for February 12, 2014, with the provision, "Defense Counsel must appear in person." The February 5, 2014 order repeated the requirements that a pretrial memo, motions in limine and a signed plea agreement must be submitted by 3:30 p.m. on February 14, 2014, with the trial to be held February 20, 2014.

9. Respondent appeared for the February 12, 2014 pretrial conference, but left before the hearing began because he reportedly received an emergency phone call.

10. On February 18, 2014, Respondent faxed to the court a "Motion to vacate scheduled hearing and Request for Change of Plea and Request for Setting." The motion stated, "Defense Counsel and Counsel For The State discussed the matter and reached an agreement that can be presented to the Court which requires that the current hearing be vacated and the matter be set for a change of plea."

11. The referenced "agreement" was one which would require Mr. Wixom to plead guilty to the charge of Driving While Under the Influence. Respondent proposed the agreement without reviewing discovery in the case, which showed that Mr. Wixom had a 0.00 blood alcohol level and that blood amphetamines were present.

3

12. As a result of Respondent's motion, the matter was set for a change of plea hearing on March 19, 2014.

13. Mr. Wixom and his parents secured discovery from the County Attorney's office on March 19, 2014, which included the blood test results mentioned above. The presence of blood amphetamines was explained by the fact that Mr. Wixom was experiencing a hypoglycemic episode as a result of poorly controlled diabetes, which also explained his erratic behavior at the time of his arrest.

14. On April 8, 2014, the Wixoms wrote a letter terminating Respondent's services, stating, "You have continuously lied to us. You never went after any case file paper work from the District attorney in Green River, Wyoming. You would not return our calls. You called us Myth [sic] users. You never filed all the paper work needed in Wyoming. After 2 weeks you text at 5 A.M. to say you are calling now. We have done all the work for you and you still do nothing. So our bill is paid in full. We will never recommend you to anyone."

15. On April 11, 2014, an Order was entered resetting the change of plea hearing for April 17, 2014.

16. On April 14, 2014, Respondent's office faxed an unsigned motion to withdraw as counsel to the court.

4

17. On April 16, 2014, Green River attorney Stewart Toolson entered his appearance for Wixom. An Order was entered resetting the change of plea hearing to April 22, 2014.

18. Stewart Toolson presented the prosecutor, Damon DeBernardi, with evidence that at the time of his arrest Mr. Wixom was experiencing a hypoglycemic episode which explained his erratic behavior leading to his arrest. Mr. Toolson also presented evidence that the presence of blood amphetamines in Mr. Wixom's lab work was attributable to lawfully-prescribed medication for his diabetes.

19. The criminal matter was resolved with Mr. Wixom pleading guilty to a charge of reckless endangerment with a 12-month jail sentence, all suspended, and 12 months of unsupervised probation.

20. On April 10, 2014, a complaint against Respondent was received by the Office of Bar Counsel. The complainants, Wixom and his parents, alleged that Respondent failed to return calls, failed to do discovery in the case, and kept telling them Wixom was drunk. The Wixoms obtained the paperwork from the arrest, which showed that their son had not been drinking. The Wixoms fired Respondent after he failed to inform them that a court date had been cancelled and continued to refuse to return their calls. They requested the return of the $500 fee they had paid Respondent and "an investigation as to whether [Respondent] should even be practicing law."

5

21. On April 11, 2014, the Office of Bar Counsel mailed a copy of the complaint to Respondent and asked him to submit a written response by April 28, 2014. Respondent did not respond. On May 1, 2014, the Office of Bar Counsel sent an email to Respondent reminding him that he was past time to respond to the complaint. Respondent did not respond. On May 30, 2014, another email was sent to Respondent reminding him of his obligation to respond to the complaint. Respondent did not respond. On June 3, 2014, Assistant to Bar Counsel called the telephone number provided by Respondent to the Wyoming State Bar and learned that Respondent was no longer working for that office and that his cell phone number had been disconnected.

22. On December 4, 2014—more than seven months after the April 28, 2014 deadline for Respondent to respond to the complaint, the following letter from Respondent was received by Assistant to Bar Counsel:

> Dear Ms. Howshar:
>
> Enclosed please find all the pertinent information regarding Thomas Wixom. This is the complete information I received from the prosecutors [sic] office regarding Mr. Wixom's case. You will note from the documentation that he entered a plea before he hired me which was vacated and a new hearing was set. At the hearing I did receive additional information that Mr. Wixom tested over the legal limit for alcohol. The prosecutor and myself worked out a satisfactory negotiation which my client denied. I will note that it was not so much my client but the influence of his mother who was the actual person that filed the bar complaint. The parents are unhappy be-

6

cause they were told by their son that he was not drinking. However, the blood draw shows just the opposite. We had a deal which was negotiated very favorable to Mr. Wixom which was unfortunately was denied. I indicated that they were going against my advise [sic] at which time they terminated my representation.

Please understand that all clients are not happy with the proposed negotiation deal but this was a very favorable outcome for Mr. Wixom. It is unfortunate that he refused to go through with it. As of this date, I do not know the final outcome of Mr. Wixom's case.

23. Respondent's response to the Wixom complaint contains a number of inaccuracies. For instance, there was no information that Wixom tested over the legal limit for alcohol. In fact, the blood draw to which Respondent referred showed the opposite, .00% ethyl alcohol.

24. On December 22, 2014, Bar Counsel received a letter from Respondent, dated December 17, 2014, apologizing for the delay in responding to the complaint and explaining, "I relocated my office which required a great deal more time than anticipated. As such, there was a delay in all of the work generated by my office. In addition, my personal divorce action became very time consuming and acrimonious." The letter went on to offer the following clarification:

I believe my previous letter was not complete on what transpired between myself, the prosecutor and my client. I was in the process of negotiating a plea agreement with each item being presented to my client. Once we had the terms worked out, initially Mr. Wixom agreed to the terms thereof. After he spoke with his family members he decided to not accept the negotiated

7

deal. I have the obligation to inform all my clients of the possible risks by not accepting the plea verses going to trial. The mother of Mr. Wixom was adamant that her son was innocent. However, the blood tests proved otherwise. I had a conversation with Mr. Wixom and his parents in my office regarding the blood test results, the offer of settlement, and how the case would proceed from there. At such time, my services were terminated. Never once was any plea bargain entered into without full disclosure to Mr. Wixom.

25.     At the time of the events described above Respondent was undergoing severe stress in his personal life. Respondent developed a serious drinking problem that affected his personal and professional life in a very negative way. However, late in 2014 Respondent sought treatment for his alcohol problem, and reports that he has been sober since December 25, 2014. Respondent is extremely remorseful over the conduct above, and is committed to maintaining his sobriety and in serving his clients pursuant to his professional obligations in the future.

26.     Respondent's disciplinary history in Utah includes a 2001 public reprimand for violation of Rules 1.3 (diligence), 1.4 (communication), 1.16 (declining or terminating representation), and 8.4 (misconduct); a 2002 suspension (stayed to six months of unsupervised probation) for violation of Rules 1.1 (competence), 1.2 (scope of representation), 1.3 (diligence), 1.4 (communication) and 8.4 (misconduct); a one-year probation in 2008 for violation of Rules 1.15 (failure to maintain a trust account) and 8.4 (misconduct); and a 2014 public reprimand

8

for violation of Rules 1.1 (competence) and 8.1 (failure to respond to disciplinary counsel).

27. A formal charge was filed in the above-captioned matter on May 19, 2015, and served upon Respondent by certified mail on May 27, 2015. Respondent failed to timely respond to the Formal Charge, and on June 18, 2015, Bar Counsel filed and served a Motion for Entry of Default.

28. Upon receipt of the Motion for Entry of Default, Respondent contacted Bar Counsel and expressed his willingness to stipulate to a public censure in the matter. Respondent concedes that the above-described conduct of Respondent in his representation of Thomas Wixom and in his failure to timely respond to inquiries from Bar Counsel constitute violations of Rule 1.1 (competence), 1.3 (diligence) and 1.4 (communication with client).

## ABA SANCTION GUIDELINES

29. The American Bar Association's "Standards for Imposing Lawyer Discipline" (hereafter referred to as the "ABA Standards") state, "The purpose of lawyer discipline proceedings is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession." ABA Standard 3.0 lists the factors to be considered in imposing a sanction after a finding of lawyer misconduct:

9

(a)    the duty violated;

(b)    the lawyer's mental state;

(c)    the potential or actual injury caused by the lawyer's misconduct; and

(d)    the existence of aggravating or mitigating factors.

30.    Respondent's misconduct falls within the heading "Violation of Duties Owed to Clients," which the ABA Standards subcategorize (pertinent to this matter) as "Lack of Diligence" (Standard 4.4).

31.    The ABA Standards point toward a public censure (referred to in the ABA Standards as a "reprimand") for Respondent. Section 4.43 states, "Reprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client."

32.    ABA Standard 9.0, entitled "Aggravation and Mitigation," provides as follows:

9.1    *Generally*

After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose.

9.2    *Aggravation*

9.21    *Definition.* Aggravation or aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed.

10

9.22 *Factors which may be considered in aggravation.* Aggravating factors include:

(a) prior disciplinary offenses;

(b) dishonest or selfish motive;

(c) a pattern of misconduct;

(d) multiple offenses;

(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;

(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

(g) refusal to acknowledge wrongful nature of conduct;

(h) vulnerability of the victim;

(i) substantial experience in the practice of law;

(j) indifference in making restitution; and

(k) illegal conduct, including that involving the use of controlled substances.

## 9.3 *Mitigation.*

9.31 *Definition.* Mitigation or mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed.

9.32 *Factors which may be considered in mitigation.* Mitigating factors include:

(a) absence of a prior disciplinary record;

(b) absence of a dishonest or selfish motive;

(c) personal or emotional problems;

(d) timely good faith effort to make restitution or to rectify consequences of misconduct;

(e) full and free disclosure of disciplinary board or cooperative attitude toward proceedings;

(f) inexperience in the practice of law;

(g) character or reputation;

(h) physical disability;

(i) mental disability or chemical dependency including alcoholism or drug abuse when:

  (1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;

11

> (2) the chemical dependency or mental disability caused the misconduct;
>
> (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and
>
> (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.
>
> (j) delay in disciplinary proceedings;
> (k) imposition of other penalties or sanctions;
> (l) remorse; and
> (m) remoteness of prior offenses.

9.4    *Factors Which Are Neither Aggravating nor Mitigating.*

> The following factors should not be considered as either aggravating nor mitigating:
>
> (a) forced or compelled restitution;
> (b) agreeing to the client's demand for certain improper behavior or result;
> (c) withdrawal of complaint against the lawyer;
> (d) resignation prior to completion of disciplinary proceedings;
> (e) complainant's recommendation as to sanction; and
> (f) failure of injured client to complain.

33.    The following aggravating factors are present in Respondent's case:

(a) prior disciplinary offenses; (c) a pattern of misconduct; (d) multiple offenses;

(e) failing to timely cooperate with Bar Counsel's investigation; (h) vulnerability

of victim; and (i) substantial experience in the practice of law.

34.    The following mitigating factors are present in Respondent's case:

(c) personal or emotional problems; (i) Respondent's recovery from the alcohol

dependency as demonstrated by a meaningful and sustained period of successful rehabilitation; and (l) remorse.

35. In the event that the Court issues a public censure, Respondent has agreed to the issuance of the following press release:

> The Wyoming Supreme Court today issued a public censure to Ogden, Utah lawyer Stuwert B. Johnson. Johnson, who is a member of the Wyoming State Bar, undertook the representation of a client on a criminal charge of driving under the influence of alcohol in Sweetwater County. After missing several court dates, Johnson attempted to negotiate a plea agreement to have his client plead guilty to the DUI charge based on Johnson's belief that blood testing revealed the presence of alcohol in his client's system. In fact, the blood test indicated no alcohol. The client retained other counsel and submitted a grievance about Johnson to the Wyoming State Bar.
>
> After the grievance was filed, Johnson failed to timely respond to Bar Counsel's inquiries in the matter, and failed to timely respond to a formal charge of professional misconduct brought by Bar Counsel. Johnson ultimately agreed that his conduct in the matter violated several Wyoming Rules of Professional Conduct, including Rule 1.1 (competence), Rule 1.3 (diligence) and Rule 1.4 (communication with client). Johnson stipulated to a public censure for his conduct, which stipulation was approved by the Board of Professional Responsibility and ordered by the Court. Johnson was ordered to pay an administrative fee of $500.00 and costs in the amount of $50.00 to the Wyoming State Bar.

## RECOMMENDATION

In consideration of the foregoing, the Board recommends:

(1) That Respondent receive a public censure; and

13

(2)    That Respondent be ordered to pay an administrative fee of $500.00 and costs of $50.00 to the Wyoming State Bar.

Dated July 24, 2015.

Jenifer E. Scoggin, Chair
Board of Professional Responsibility